**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 98-21090
_____

PRINCE DWIGHT MAX-GEORGE,

Petitioner/Appellant,

versus

JANET RENO, U.S. Attorney General, AND RICHARD
CRAVENER, District Director, Immigration and Naturalization
Service,

Respondents/Appellees.

Appeal from the United States District Court
for the Southern District of Texas

February 24, 2000

Before JOLLY, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:

Prince Dwight Max-George ("Max-George") appeals the district court's dismissal of his habeas corpus petition for lack of jurisdiction. The respondents, Attorney General Janet Reno and INS Deputy Director Richard Cravener (collectively "the government") raise several procedural objections to Max-George's appeal. We agree with one of the government's arguments and dismiss this appeal for lack of jurisdiction.

## I.

Prince Dwight Max-George is a thirty-year-old native and citizen of Sierra Leone. He entered the United States in 1972 when he was four years old. On May 23, 1988, Max-George committed a crime, theft by receiving. In 1990, he became a temporary resident alien under 8 U.S.C. § 1255(a). On June 27, 1991, Max-George was convicted of the 1988 offense and sentenced to four years' imprisonment.

On September 18, 1998, the INS began removal proceedings against Max-George by serving him with a Notice of Intent to Issue a Final Administrative Removal Order. The notice charged Max-George with deportability under 8 U.S.C. § 1227 (a)(2)(A)(iii).[1] On October 6, the district director issued a final administrative removal order, and Max-George responded with a petition for habeas corpus relief on November 20, 1998. Max-George claimed that the "retroactive" application of the "aggravated felon" classification deprived him of due process.

On December 1, 1998, the district court dismissed Max-George's petition for a writ of habeas corpus. The district court held that 8 U.S.C. § 1252 restricted review to the court of appeals. Alternatively, the court held that even if it had jurisdiction, Max-George's appeal should still be dismissed for lack of subject matter jurisdiction because the petition was untimely under the statute. Finally, the district court held that Max-George's argument for habeas relief was without merit.

## II.

The government presents two procedural objections to Max-George's appeal. First, it argues that since Max-George has already been deported, his challenges to his deportation are moot.

---

[1] This provision reads: "Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii).

Second, the government argues that even if a live controversy exists, our jurisdiction is foreclosed by 8 U.S.C. § 1252. We address each of these claims in turn.

A.

The government first asserts that Max-George's appeal is moot because he has been deported and is no longer in INS custody. We hold, however, that this claim is not moot for Article III purposes.

Max-George's ongoing Article III injury is that he cannot be admitted into the United States within ten years of the date of his removal under 8 U.S.C. § 1182(a)(9)(A)(ii)[2] as a "collateral consequence" of his deportation. In *Umanzor v. Lambert*, 782 F.2d 1299, 1301 (5th Cir. 1986), we held that both future inadmissibility and risk of prosecution for future reentry constituted such "collateral consequences," which preserved Article III standing in a case much like the one before us today. That decision was based on the Supreme Court's decision in *Sibron v. New York*, 392 U.S. 40, 55, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968), where the Court held that the "mere possibility of adverse collateral consequences [was] sufficient to preclude a finding of mootness."

In *Spencer v. Kemna*, 523 U.S. 1, 118 S. Ct. 978, 140 L. Ed.2d 43 (1998), however, the Supreme Court retreated from *Sibron* and withdrew the presumption that collateral consequences exist. *Id.* at 986. The Court distinguished between two types of collateral consequences. First,

---

[2]This provision reads:

Any alien not described in clause (i) [inapplicable here] who--
(I) has been ordered removed under section 240 or any other provision of law . . . and who seeks admission within 10 years of the date of such alien's departure or removal . . . is inadmissible.

8 U.S.C. 1182(a)(9)(A)(ii).

"concrete" collateral consequences are those that have "occurred, that [are] imminently threatened, or that [are] imposed as a matter of law (such as deprivation of the right to vote, to hold office, to serve on a jury, or to engage in certain businesses)." *Id.* at 983. The second are presumed, or hypothetical, consequences, such as the chance that a parole violation might affect a future parole hearing if the petitioner later returned to prison on a different offense. *Id.* at 986. The Court found the latter too speculative to qualify as a legitimate collateral consequence. *Id.*

*Spencer*, however, countenances only a minor modification to *Umanzor*. Inadmissibility into the United States is a penalty imposed as a matter of law. The law has changed Max-George's status with respect to his admissibility whether he tries to return to the United States or not. While this is a close case, the penalty does, therefore, constitute a concrete collateral consequence, rather than a presumed one. On the other hand, the risk of prosecution for future reentry into the United States under 8 U.S.C. § 1326 is a presumed, or hypothetical, collateral consequence. Max-George is "able-- and indeed required by law--to prevent such a possibility [of future prosecution] from occurring" by simply not reentering the United States. *Spencer*, 118 S. Ct. at 987. In other words, because he can avoid prosecution, this does not constitute a legitimate collateral consequence. But because he does have a legitimate, ongoing injury, he does have Article III standing.

B.

The government next argues that jurisdiction over Max-George's habeas petition is precluded by 8 U.S.C. § 1252(a)(2)(C), which provides that:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2) . . .(C).

8 U.S.C. § 1252(a)(2)(C). Max-George's prior offense, theft by receiving, for which he was

-4-

sentenced to four years in prison, is an "aggravated felony" covered by § 1227(a)(2)(C). The government therefore posits that, under § 1252, no judicial review, direct or collateral, is available. Max-George argues that this statute does not preclude jurisdiction over his petition for habeas corpus, and that if our jurisdiction is precluded, the elimination of habeas jurisdiction here is unconstitutional.

This is the first case in which we examine the "permanent" jurisdiction-stripping provisions enacted by Congress as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").[3] Our previous cases considered IIRIRA's so-called "transitional" rules, which applied to cases for which deportation proceedings had begun before April 1, 1997, and those which concluded more than thirty days after September 30, 1996.[4] The "transitional rules" contained somewhat explicit jurisdiction-stripping provisions, which declared that "there shall be no appeal of decisions about discretionary relief or in criminal aliens' cases," *see* IIRIRA § 309(c)(4)(E), (G), Pub. L. No. 104-208, 110 Stat. 3009-546, 597 (1996), and that final deportation orders of such aliens

---

[3]     The "permanent" rules apply to this case because the government commenced deportation proceedings against Max-George after April 1, 1997. *See Requena-Rodriguez v. Pasquarell,* 190 F.3d 299, 302-03 (5th Cir. 1999).

[4]     *See, e.g., Lerma de Garcia v. INS*, 141 F.3d 215, 217 (5th Cir. 1998) (holding that while under the transitional rules direct review is precluded, a limited opportunity to petition for habeas corpus remains); *Williams v. INS*, 114 F.3d 82, 83 (5th Cir. 1997) (same); *Nguyen v. INS*, 117 F.3d 206, 207 (5th Cir. 1997) (same). Other circuits have also written extensively on the effects of the "transitional" rules' jurisdiction-stripping provisions. *Compare Goncalves v. Reno*, 144 F.3d 110, 119-25 (1st Cir. 1998) (holding that, under the transitional rules, habeas review remained because Congress did not explicitly remove it); *Jean-Baptiste v. Reno*, 144 F.3d 212, 216-21 (2d Cir. 1998) (same), *DeSousa v. Reno*, 190 F.3d 175, 187 (3d Cir. 1999) (same); *Bowrin v. INS*, 194 F.3d 483, 488-90 (4th Cir. 1999) (same); *Pak v. Reno*, No. 98-3852, 1999 WL 791660, at *1, *3-*4 (6th Cir. Oct. 6, 1999) (same) *with Yang v. INS*, 109 F.3d 1185, 1191-97 (7th Cir. 1997) (describing the lack of judicial review under the transitional rules and additionally commenting that "effective April 1, 1997, . . . [I]IR[I]RA abolishes even review under § 2241, leaving only the constitutional writ, unaided by statute").

"shall not be subject to review by any court," *see* AEDPA § 440(a), Pub. L. No. 104-132, 110 Stat. 1214, 1277 (1996). *See generally Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 305 (5th Cir. 1999) (discussing several provisions of the transitional rules). We held in *Requena-Rodriguez* that because these transitional provisions did not explicitly eliminate habeas review of such decisions, the transitional rules repealed "normal judicial review [i.e. direct appeal], rather than collateral review." *Requena-Rodriguez*, 190 F.3d at 305.

However, in *Requena-Rodriguez*, we noted that the jurisdiction-stripping provisions within IIRIRA's "permanent" rules were far more explicit, as they "all begin with . . . more preclusive language: [n]otwithstanding any other provisions of law, no court shall have jurisdiction." *Id.* at 305-06 (citing 8 U.S.C. §§ 1252(a)(2)(B), 1252(a)(2)(C), and 1252(g)). Accordingly, in *Requena-Rodriguez* we suggested that while § 2241 habeas review was available under the "transitional" rules, it might not be available under the "permanent" rules. *See id.* As the permanent rules were not at issue in *Requena-Rodriguez*, we did not there delineate the scope and effect of their jurisdiction-stripping provisions. We are faced with that question today.

It is well-settled that Congress must be explicit if it wishes to repeal habeas jurisdiction. *See Felker v. Turpin*, 518 U.S. 651, 660-61, 116 S. Ct. 2333, 2338-39, 135 L. Ed. 2d 827, __ (1996) ("[W]e decline to find a . . . repeal of § 2241 of Title 28 . . . by implication."). Further, as we noted in *Requena-Rodriguez*, *Felker* was decided only three months before IIRIRA became law, and therefore *Felker*'s "reminder that habeas repeal requires explicit language was fresh when Congress was considering the transitional and permanent provisions of IIRIRA." *Requena-Rodriguez*, 190 F.3d at 305 n.21. Applying this principle here, § 2241 habeas jurisdiction is only eliminated by IIRIRA's permanent rules if its provisions explicitly eliminate § 2241 habeas jurisdiction.

-6-

We hold that IIRIRA eliminates § 2241 jurisdiction for aliens like Max-George. The clear language of IIRIRA's permanent rules force an alien to raise all potential issues regarding his deportation at one place and time: a petition for review filed in the court of appeals. Specifically, IIRIRA provides that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this subsection.

8 U.S.C. § 1252(b)(9). This section, which the Supreme Court has called an "unmistakable zipper clause," *see Reno v. American-Arab Anti-Discrimination Committee*, __ U.S. __, __, 119 S. Ct. 936, 943, __ L. Ed. 2d __, __ (1999) clearly mandates that every question involving the removal of an alien from the United States, whether of law or factual application, statutory or constitutional interpretation, is to be consolidated in a petition for review available only as defined by other provisions within § 1252. *See American-Arab*, __ U.S. at __, 119 S. Ct. at 943, __ L. Ed. 2d at __ ("[I]t is a sort of 'zipper clause' that says 'no judicial review in deportation cases unless this section provides judicial review."); *see also Requena-Rodriguez*, 190 F.3d at 305-06.

While other provisions within § 1252 provide for various forms of judicial review, direct and collateral,[5] in some circumstances, § 1252(a)(2)(C), specifically applicable here, explicitly withdraws all jurisdiction of final orders removing certain criminal aliens. It provides that:

---

[5]     Congress provided for limited habeas corpus review of orders denying admission to arriving aliens. *See* 8 U.S.C. § 1252(e)(2). Habeas review was not provided for in any other cases falling within the ambit of § 1252. Since "[i]t is a fundamental tenet of statutory construction that Congress intended to exclude language included in one section of a statute, but omitted from another section," *Ott v. Johnson*, 192 F.3d 510, 512 & n.9 (5th Cir. 1999) (citing *Hohn v. United States*, 524 U.S. 236, 118 S. Ct. 1969, 141 L. Ed. 2d 242 (1998)), we can infer that Congress's express elimination of § 2241 jurisdiction in this context was the intended result.

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section (a)(2) or 1227(a)(2)(A)(iii) ["aggravated felony"], (B) ["controlled substances"], (C) ["certain firearm offenses"], or (D) ["miscellaneous crimes"] of this title, or any offense covered by section 1227(a)(2)(A)(ii) ["crimes of moral turpitude"] of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(I) of this title.

8 U.S.C. § 1252(a)(2)(C). The portion of the section explaining that the jurisdictional limitation is effective "notwithstanding any other provision of law" clearly precludes habeas jurisdiction under 28 U.S.C. § 2241, which is merely an "other provision of law" which gives federal judges the power to grant writs of habeas corpus. *See Ex Parte Bollman*, 8 U.S. (4 Cranch) 75, 94-95 (1807) ("[T]he power to award the writ by any of the courts of the United States, must be given by written law."); *Felker*, 518 U.S. at 664, 116 S. Ct. at 2340, __ L. Ed. 2d at __. As we noted in *Requena-Rodriguez*, the primary difference between the "transitional" and "permanent" rules is the preclusive language that the jurisdictional limitation applies "notwithstanding any other provision of law." *Requena-Rodriguez*, 190 F.3d at 306. While Congress could theoretically have been more explicit by specifically mentioning habeas corpus in general or § 2241 in particular, we believe the jurisdictional limitation described throughout § 1252 was sufficiently explicit. *See Richardson v. Reno*, 162 F.3d 1338, 1358-59 (11th Cir. 1998) ("Congress could hardly have chosen broader language to convey its intent to repeal any and all jurisdiction except that provided by [IIRIRA]."); *cf. Yang v. INS*, 109 F.3d 1185, 1195 (7th Cir. 1997) ("As a practical matter, the right to obtain review, in any court, on the theories our petitioners advance is gone. That is the point of the legislation. Congress wanted to expedite the removal of criminal aliens from the United States by eliminating judicial review."). Accordingly, we hold that IIRIRA's permanent provisions eliminate § 2241 habeas corpus jurisdiction

for those cases that fall within § 1252(a)(2)(C).

Max-George argues that the "Great Writ," i.e. some form of habeas review by a federal court, must protect him because judicial review cannot be completely foreclosed; as he puts it, judicial review "is not a shell game." However, this concern is exaggerated. Criminal aliens like Max-George who fall within § 1252(a)(2)(C) are not completely limited to review by the Board of Immigration Appeals ("BIA"). While IIRIRA has eliminated federal court jurisdiction in these particular immigration cases, it leaves open some judicial consideration, in petitions for review, of appeals from BIA decisions. When faced with petitions for review from criminal aliens like Max-George, which appear barred by § 1252(a)(2)(C), courts must make three specific inquiries. Only if all of them are answered affirmatively must the petition for review be dismissed for lack of jurisdiction.

First, courts considering petitions for review must determine "if the specific conditions exist that bar jurisdiction." *Richardson*, 180 F.3d at 1315 ("[I]f the government invokes INA § 242(a)(2)(C), this Court will determine whether Richardson is actually an alien, is deportable, and deportable for a reason covered by INA § 242(a)(2)(C)."); *Camacho-Marroquin v. INS,* 188 F.3d 649, 651 (5th Cir. 1999) ("The prerequisites to review preclusion under INA 242(a)(2)(C) are: (I) an alien; (ii) deportable; (iii) for committing a crime covered in INA 237(a)(2)(A)(iii). This Court has jurisdiction [over petitions for review] to determine whether these prerequisites for precluding review have been met.") (citation omitted); *see also Okoro v. INS*, 125 F.3d 920, 925 (5th Cir. 1997) (holding that, in a transitional rules case, "to determine whether this jurisdictional bar applies to Okoro's petition for review, we must examine whether the underlying offenses relied on by the INS to deport Okoro [fall within the statute]"). In this case, Max-George does not dispute that he is an alien, or that he was convicted of theft by receiving, for which he was sentenced to four years in prison.

Accordingly, Max-George was convicted of an "aggravated felony." *See* 8 U.S.C. § 1101(a)(43)(G) (defining "aggravated felony" as, *inter alia*, "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment is at least one year"). Thus, the conditions specified in § 1252(a)(2)(C) which would bar our jurisdiction even if Max-George had filed a petition for review exist.

Second, courts faced with petitions for review from criminal aliens must determine whether the particular provisions classifying the petitioner under the jurisdiction-stripping provision (for example, as having committed an "aggravated felony" or a "crime of moral turpitude") are being constitutionally applied. Thus, in this case, had Max-George filed a petition for review, we would have to determine whether categorizing Max-George as an "aggravated felon" under § 1252(a)(2)(C) is constitutional.

Max-George asserts that since he could not be classified as an "aggravated felon" at the time he committed his offense or at the time he was convicted,[6] to classify him as an "aggravated felon"

---

[6]    In 1988, Congress amended the Immigration and Nationality Act by establishing that conviction of an aggravated felony was a ground for deportation, Pub. L. 100-690, 102 Stat. 4470, 4471 (1988), and specified that this change would apply to all convictions occurring after the date of enactment, November 18, 1988. Pub. L. 100-690, 102 Stat. 4181, 4470 (1988). At the time, however, theft was not included in the definition of "aggravated felony." Therefore, at the time Max-George committed his crime, and at the time he was convicted, he could not have been classified as a deportable "aggravated felon."

In 1994, Congress added theft offenses punished with five years' imprisonment to the list of aggravated felonies. Pub. L. 103-416, 108 Stat. 4305, 4322 (1994). In 1996, as part of AEDPA, Congress again amended the definition of "aggravated felony," this time to apply to theft offenses punishable by at least one year's imprisonment. Pub. L. 104-208, 110 Stat. 3009, 3009-627 (1996). Congress there specified that the list of offenses would apply to convictions entered both before and after the enactment. Pub. L. 104-208, 110 Stat. 3009, 3009-628. Accordingly, while Max-George's offense did not fall under the 1988 or 1994 classification of "aggravated felon," the 1996 amendment classifies him as an "aggravated felon"

-10-

today is unconstitutionally retroactive. We disagree. We have previously held that Congress has the power to make an alien's past criminal conduct subject to present or future deportation notwithstanding the fact that the alien could not have been deported for the act at the time it was committed. *See Requena-Rodriguez*, 190 F.3d at 308 ("It is well settled that Congress has the authority to make past criminal activity a new ground for deportation."). In fact, due to this well settled principle of law, we held in *Requena-Rodriguez* that IIRIRA "has no retroactive effect when it is triggered by pre-[IIRIRA] convictions." *Id.* at 308. Accordingly, the 1996 definition of "aggravated felony" was constitutionally applied to Max-George, and even if he filed a petition for review, the second condition depriving us of jurisdiction would be satisfied.

Third, on petitions for review, assuming that the jurisdictional bar applies, and depending on the petitioner's arguments, "jurisdiction remains to consider whether the level of judicial review remaining in a particular case satisfies the [Constitution]." *Richardson*, 180 F.3d at 1315.[7] Accordingly, in this case, had Max-George filed a petition for review, we would have to decide whether the preclusion of habeas review to him can be reconciled both with the constitutional

---

[7]    We recognize that, under the transitional rules, we have held that jurisdiction over constitutional claims challenging the validity of BIA procedures was precluded on direct review. *See Lerma de Garcia*, 141 F.3d at 217; *Nguyen*, 117 F.3d at 207; *Williams*, 114 F.3d at 84. In those cases, we noted that the potential lack of an avenue to review constitutional claims was mitigated by the possibility of "some opportunity to apply for a writ of habeas corpus" under the transitional rules. *See Lerma de Garcia*, 141 F.3d at 217; *Nguyen*, 117 F.3d at 207; *Williams*, 114 F.3d at 84. However, as described *supra*, the permanent rules explicitly remove all habeas jurisdiction from the federal courts, while consolidating all review of immigration decisions to petitions for review filed in the courts of appeals. As we noted in *Lerma de Garcia*, "when a petitioner brings a constitutional challenge against the BIA proceedings themselves, an avenue of judicial review may be required." *Lerma de Garcia*, 141 F.3d at 216-17 (citing *Chow v. INS*, 113 F.3d 659, 668 (7th Cir. 1997)). Given that IIRIRA's permanent rules channel all judicial review into petitions for review to be filed in the courts of appeals, constitutional challenges to BIA and to the scope of review must be brought in that context.

-11-

limitation on the "suspension" of habeas corpus and the constitutional guarantee of due process.[8] *See* U.S. Const. Art. I, § 9 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."); U.S. Const., amend. V ("No person shall . . . be deprived of life, liberty, or property, without due process of law . . . .").

To some degree, IIRIRA's stripping of § 2241 jurisdiction implicates the guarantee that the "Privilege of the Writ" preserved by the Constitution cannot be suspended. *See* U.S. Const. Art. I, § 9 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."); *United States v. District Director of the Immigration and Naturalization Service*, 634 F.2d 964, 967 (5th Cir. 1981) (stating that the "sweep of [judicial review] could not be a clean one because of Article I, section 9 of the Constitution, providing . . . that the Great Writ should not be suspended unless rebellion or invasion was in progress"). Ho wever, as several of our sister circuits have explained, the writ of habeas corpus preserved from suspension in the Constitution is narrower than the writ made available in § 2241. *See Yang,* 109 F.3d at 1195-96 ("28 U.S.C. § 2241 offers an opportunity for collateral attack more expansive than the Great Writ preserved in the [C]onstitution[.]"); *Ramallo v. Reno*, 114 F.3d 1210,

---

[8]    Max-George does not explicitly state the grounds for his contentions that habeas corpus review must be available to him; rather, he merely asserts that it must be available and supports his assertion with citations to several cases. Max-George cites *Magana-Pizano v. INS*, 152 F.3d 1213, 1218-22 (9th Cir.) (holding that, under the transitional rules, habeas review must be available because a contrary interpretation would violate the Suspension Clause), *modified* 159 F.3d 1217 (1998), *vacated* __ U.S. __, 119 S. Ct. 1137, 143 L. Ed. 2d 206 (1999); *Henderson v. INS*, 157 F.3d 106, 121 (2d Cir. 1998) (holding that, under the temporary rules, eliminating habeas review would implicate Suspension Clause concerns); *Goncalves v. Reno*, 144 F.3d 110, 117-20 (1st Cir. 1998) (same). Since these three cases all involve Suspension Clause challenges to the restriction of habeas jurisdiction in the temporary rules context, notwithstanding Max-George's complete failure to mention the Suspension Clause (or, for that matter, any portion of the Constitution), we assume that his challenge to the permanent rules is similar to the challenges accepted in *Magana-Pizano*, *Henderson*, and *Goncalves*.

1214 (D.C. Cir. 1997). Accordingly, Congress can repeal or supercede § 2241 without violating the Suspension Clause, assuming that the constitutional writ guaranteed against "suspension" is not eliminated.

While in some cases this distinction might be relevant, it is immaterial when considered in the immigration context, where "over no conceivable subject is the legislative power of Congress more complete," and where we must tolerate the fact that "in the exercise of its broad power over immigration and naturalization, Congress regularly makes rules that would be unacceptable if applied to citizens." *Reno v. Flores*, 507 U.S. 292, 205-06, 113 S. Ct. 1439, 1449, 123 L. Ed. 2d 1 (1992). Accordingly, the Supreme Court has repeatedly authorized Congress to allow executive branch officers to make removal decisions outside the province of judicial review. *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-43, 70 S. Ct. 309, 312-13, __ L. Ed. __, __ (1950) ("[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien."); *Heikkila v. Barber*, 345 U.S. 229, 234, 73 S. Ct. 603, 606, __ L. Ed. __, __ (1953) (describing as proper the then-existing "congressional decision to place the final determination of the right of admission i[n] executive officers, without judicial intervention") (citing cases); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210, 73 S. Ct. 625, 628, __ L. Ed. __ (1953) ("Courts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."); *Carlson v. Landon*, 342 U.S. 524, 537-38, 72 S. Ct. 525, 533, __ L. Ed. __, __ (1953) ("Deportation is not a criminal proceeding and has never been held to be punishment. No jury sits. No judicial review is guaranteed by the Constitution."); *see also Zadvydas v. Underdown*, 185 F.2d 279, 285, 288 (5th Cir. 1999)

(commenting generally that "the power to expel or exclude aliens is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control" and that, in the context of IIRIRA, that "Congress has clearly indicated that it desires minimal judicial intrusion into deportation decisions"). We agree with the Seventh Circuit which, interpreting these precedents in light of IIRIRA, has stated that:

> Aliens may seek the writ that Art. I § 9 cl. 2 preserves against suspension. But we are reluctant to place weight on its availability, because the Supreme Court long ago made it clear that this writ does not offer what [petitioner] desi re[s]: review of [a] discretionary decision[] by the political branches of government.

*Yang*, 109 F.3d at 1195.

We need not here describe the breadth of the Suspension Clause's guarantee. However, it is clear that in the present context, where despite IIRIRA's limitations "the alien still receives substantial judicial review," *Richardson*, 180 F.3d at 1316, any Suspension Clause guarantee which Max-George can claim is satisfied.

Had Max-George filed a petition for review, we would also have to consider whether the procedures used by the government in excluding Max-George satisfied due process. *See Reno*, 507 U.S. at 306, 113 S. Ct. at 1449, 123 L. Ed. 2d at __ ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 100-01, 23 S. Ct. 611, 614, 47 L. Ed. 721 (1903)); *Carlson*, 342 U.S. at 538, 72 S. Ct. at 533, 96 L. Ed. at __ ("Such legislative provision requires that those charged with that responsibility [of excluding aliens] exercise it in a manner consistent with due process."); *Mezei*, 345 U.S. at 212, 73 S. Ct. at 629, 97 L. Ed. at __ ("[A]liens who have passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness

encompassed in due process of law."); *Zadvydas*, 185 F.3d at 289 ("The language of the due process clause refers to 'persons,' not 'citizens,' and it is well established that aliens within the territory of the United States may invoke its provisions.").

Max-George argues that due process was violated because the INS retroactively classified him as an aggravated felon in violation of the constitution. As described *supra*, however, there is no true retroactivity problem in making an alien's past crimes new grounds for deportation. *See Requena-Rodriguez*, 190 F.3d at 308 ("It is well settled that Congress has the authority to make past criminal activity a new ground for deportation."). Accordingly, the INS did not violate due process by classifying Max-George as deportable in accordance with IIRIRA.

In sum, IIRIRA's permanent rules channel all judicial review of final orders of removal by the INS to petitions for review filed in the courts of appeals. In cases involving "aggravated felons" like Max-George, IIRIRA removes all jurisdiction, direct or collateral, from the federal courts. Accordingly, when faced with petitions for review in such cases, if: (1) the specific conditions that bar jurisdiction in the court of appeals exist, (2) the conditions barring jurisdiction are constitutionally applied to the petitioner, and (3) the level of judicial review remaining is constitutionally adequate, courts must dismiss such petitions for lack of jurisdiction. When faced with petitions for habeas corpus, however, unless a petitioner proves that his or her claims are within the habeas writ constitutionally protected (a situation which, as the Seventh Circuit has noted, is unlikely), we must summarily dismiss for lack of jurisdiction.

**III.**

We note that the jurisdiction-stripping provisions of IIRIRA have provoked both substantial

political and academic debate.[9]  However, "[w]hatever our individual estimate of that policy and the fears on which it rests, [Max-George's] right to [be present in] the United States depends on the congressional will, and courts cannot substitute their judgment for the legislative mandate." *Mezei*, 345 U.S. at 216, 73 S. Ct. at 631, __ L. Ed. at __.  Congress having expressly eliminated our power to decide Max-George's claims in the context in which he raised them, we dismiss this appeal for lack of jurisdiction.

---

[9]        *See, e.g.,* RICHARD H. FALLON, DANIEL J. MELTZER, AND DAVID L. SHAPIRO, HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 379 (4th ed. 1996 & Supp. 1998); Gerald L. Neuman, *Habeas Corpus, Executive Detention, and the Removal of Aliens*, 98 COLUM. L. REV. 961 (1998); Richard H. Fallon, Jr., *Applying the Suspension Clause to Immigration Cases*, 98 COLUM. L. REV. 1068 (1998); David Cole, *Jurisdiction and Liberty: Habeas Corpus and Due Process as Limits on Congress's Control of Federal Jurisdiction*, 86 GEO. L. J. 2481 (1998); Lenni B. Benson, *Back to the Future: Congress Attacks the Right to Judicial Review of Immigration Proceedings*, 29 CONN. L. REV. 1411 (1997).